urged. Many conditions might develop to affect the value of property between 1893 and 1912, when this case was tried.

The appellant frankly concedes that, "The court's statements of legal rights involved were correct, the plaintiff had the right to the flow of water to his mill without sensible and material diminution caused by the defendant" so that the whole controversy was one of fact for the jury, and after carefully examining all of the evidence, we see no reversible error, either as to the manner in which it was presented by the court, and we have no doubt as to the sufficiency of the proof adduced to sustain the verdict.

The assignments of error are overruled and the judgment is affirmed.

---

# Wynkoop's Estate (No. 1).

*Will—Construction of—Legacy—Mortgage.*

Testatrix directed as follows: "I give and bequeath to the heirs of my deceased brother fifteen hundred dollars in which is included a mortgage of eight hundred and sixty dollars given by my brother to me." She further directed her executors "to satisfy the same of record upon my decease, and the said fifteen hundred dollars shall be divided equally in three shares between said heirs," naming the three heirs. The court below held that the heirs of the brother were entitled to have divided among them the full sum of $1,500 without deduction of the $860 mortgage. On appeal the six judges who heard the case were equally divided in opinion and the decree was accordingly affirmed.

Argued March 3, 1913. Appeal, No. 19, Jan. T., 1913, by C. B. Lutz, J. Webster Wright and Daniel M. Geist, Executors of Elizabeth W. Wynkoop, from decree of O. C. Columbia Co., dismissing exceptions to supplemental report of auditor in Estate of Elizabeth W. Wynkoop, deceased. Affirmed by divided court.

Exceptions to auditor's supplemental report.

EVANS, P. J. filed the following opinion: The fourth paragraph of the decedent's will reads as follows:

"Fourth—I give and bequeath to the heirs of my deceased brother William Wright, fifteen hundred dollars in which is included a mortgage of eight hundred and sixty dollars, and said mortgage and interest to be valued at $860.00 given by said William Wright to me, dated July 13, 1898, and recorded the same day in the Recorder's office of Lycoming County, and I direct my executors to satisfy the same of record upon my decease, and the said fifteen hundred dollars shall be divided equally in three shares between said heirs, who are Harvey Wright, Emily Stryker, and Elvira Reeser, deceased, leaving issue, in case of the decease of any of the three children aforesaid, the children said decedent to take of the parent's share. The above named children of William Wright, deceased, or their heirs to receive no part of my residuary estate."

An inventory and appraisement of the decedent's personal estate was filed December 28, 1909, showing personal property to the amount of $11,067.50. The last item on the same being "Wm. Wright Mortgage $860.00," the mortgage mentioned in the fourth paragraph of the will.

The first and final account of the executors was filed December 31, 1910, and confirmed nisi the first day of the next term, viz.: February 6, 1911. The accountants charge themselves, inter alia, with the "Amount of Inventory and Appraisement filed $1,1067.50." This includes the Wm. Wright mortgage of $860.

The account shows a balance for distribution from personal estate amounting to $5,294.09 and from real estate amounting to $24,197.53, or a total sum for distribution of $29,491.62.

An auditor was appointed to make distribution of the balance in the hands of the executors as shown by the account to and among the parties legally entitled thereto.

In dealing with the legacy of $1,500 on the distribution sheet bequeathed to the heirs of Wm. Wright by the fourth

paragraph of the will, the learned auditor first deducted therefrom collateral inheritance tax to the amount of $75.00,—five per cent., and secondly deducted therefrom $860, the amount of the Wm. Wright mortgage, and then made distribution of the balance, viz.: of $565, equally among the heirs of Wm. Wright.

As a matter of fact, however, the learned auditor actually distributed the amount of the Wm. Wright mortgage to the decedent's residuary legatees in addition to the amount that they were legally entitled to receive. This error was promptly discovered and very properly corrected by the order and amendment made as of June 26, 1911.

The auditor's report as corrected by the order and amendment of June 26, 1911, makes no distribution of the $860,—the amount of the Wm. Wright mortgage. The amount is merely deducted from the amount of the $1,500 bequest after the collateral inheritance tax of $75.00 is first deducted.

August 7, 1911, upon presentation of petition, rule was granted to show cause why confirmation absolute of the auditor's report so far as the same related to the distribution of the $1,500 legacy bequeathed by the fourth paragraph of the will to the heirs of Wm. Wright should not be stricken off and the report referred back for correction and amendment of the specific errors alleged.

The errors alleged were: (1) that the auditor erred as to the number and identity of the heirs of Wm. Wright; and (2) that in distributing the $1,500 bequeathed to the heirs of Wm. Wright the same was not equally divided between them as the will provides.

After hearing had we reached the conclusion that the auditor had erred with respect to the number and identity of the Wm. Wright heirs and in deducting the amount of the mortgage before making distribution, in not distributing the $860, the amount of the mortgage. On December 11, 1911, the rule was made absolute and confirmation of the auditor's report so far as it related to the $1,500 legacy bequeathed to the heirs of Wm. Wright was stricken off

and the matter referred back to the auditor for correction in accordance with the views expressed in the opinion. We clearly indicated who the heirs of Wm. Wright are. Under the reference back to the auditor his duties were merely clerical.

The learned auditor made the corrections which we indicated should be made and filed a supplemental report May 6, 1912. The same day exceptions were filed thereto by Emily Stryker, a legatee (one of the three Wm. Wright heirs), and also by the decedent's executors challenging the correctness of the distribution of the $1,500 bequest to the Wm. Wright heirs as made by the supplemental auditor's report. They may all be considered together. They relate solely to the distribution of the $1,500 bequest.

The fourth paragraph of the will above quoted expressly provides that the amount of the bequest to the Wm. Wright heirs is $1,500, in which is included the Wm. Wright mortgage of $860, and further that the $1,500 shall be divided equally in three shares between said heirs who are Harvey Wright, Emily Stryker and Elvira Reeser, deceased, leaving issue.

The theory of the exceptants is that from the bequest of $1,500 there should be first deducted the collateral inheritance tax of $75.00, and secondly $860, the amount of the Wm. Wright mortgage, and that then the balance of $565, shall be equally distributed among the three heirs of Wm. Wright, and the mortgage satisfied of record without being paid.

This theory we think is erroneous. The language of the will is "and the said fifteen hundred shall be divided equally in three shares, between said heirs who are Harvey Wright, Emily Stryker and Elvira Reeser, deceased, leaving issue."

In the auditor's first report with reference to the $1,500 bequest the collateral inheritance tax was first deducted and then $860, the amount of the mortgage and the balance of $565, was equally divided in three shares between the

heirs of Wm. Wright. Such was not the intention of the testatrix. It is manifest from a reading of the fourth paragraph of the will that the testatrix intended the bequest of $1,500 to be equally divided between the heirs of Wm. Wright, who are Harvey Wright, Emily Stryker and Elvira Reeser, deceased, leaving issue.

The testatrix expressly declares that the mortgage of $860 shall be included in the legacy of $1,500 to the heirs of Wm. Wright, that is, part of it, and that they shall share it equally. She plainly says from what source $860 of the $1,500 shall come to pay this particular legacy. The mortgage has not been paid or satisfied and for the purpose of distribution it should be collected by the executors. Why not? They are to share it equally—it is to be equally divided between them. The decedent never intended the mortgage to be satisfied before being paid. The direction to the executors to satisfy the mortgage upon her decease is of no consequence. Their appointment as executors gave them that power after payment is made to them. It is not declared in the will that the executors shall satisfy the mortgage before payment is made, nor is there anything in the will from which such reference may be reasonably drawn. At most the direction to satisfy the mortgage can only be regarded as an additional authority to satisfy the same.

The executors have from the beginning regarded the Wm. Wright mortgage of $860, as an asset of the estate. In the inventory and appraisement filed there is included an item as follows: Wm. Wright mortgage $860.

On the first and final account filed by the executors they charge themselves with the full amount of the inventory and appraisement. This includes the item of the Wm. Wright mortgage. Collateral inheritance tax is likewise paid by them on the mortgage. And the mortgage still remains of record unsatisfied.

The learned counsel for the executors contended upon the argument of the exceptions that the original distribution made by the auditor is the correct and proper one.

That when the testatrix made her will the heirs of her deceased brother Wm. Wright had equally inherited the land bound by the mortgage and that her direction to the executors to satisfy the mortgage was a bequest of the amount of the mortgage equally to the heirs of Wm. Wright, and that it would be gross injustice upon the executors to disturb the original distribution at this time.

With the first contention we do not agree. As to the second there is no intention to disturb the original distribution. There has never been any application to disturb the original distribution.

There is nothing in the record to show when Wm. Wright died except that he was dead before the testatrix made her will, or whether he owned the premises bound by the mortgage at the time of his death or not. He may have parted with the title during his lifetime voluntarily or it may have been swept away from him by sheriff's sale or otherwise. They could not have inherited the premises bound by the mortgage unless he owned the same at the time of his death. He may have had other indebtedness at the time greater than his equity in the property. The language of the will is, "and the said fifteen hundred dollars shall be divided equally in three shares between said heirs who are Harvey Wright, Emily Stryker and Elvira Reeser, deceased, leaving issue." The testatrix means an equal division between the three heirs, not an unequal division.

If the contention of counsel for the executors is to prevail then Emily Stryker, one of the three heirs, who has apparently acquired title to the land bound by the mortgage, will get the total amount of the mortgage, viz.: the $860, and also one-third of the balance of $565. This would not be an equal division. It would not be equitable under the terms of the will. The mortgage was recorded July 13, 1898, and the will was made September 28, 1909, —more than eleven years later. If Wm. Wright parted with the title to the premises at any time after the recording of the mortgage and before the making of the will, subject, of course, to the payment of the mortgage by his

grantee, and the mortgage were satisfied by the executors without being collected or paid, then and in that event $860 of the bequest to the heirs of Wm. Wright would enure to the benefit of such grantee, a stranger to the blood. The $1,500 legacy is a bequest from Elizabeth W. Wynkoop, the testatrix, to the heirs of Wm. Wright, not to Wm. Wright or his grantee.

Assuming that there are two equally convenient methods of distribution that could be adopted by the executors, one of which would result in an unequal and inequitable distribution and division and the other in an equal and equitable distribution and division such as the will contemplates in this case, the latter method should be adopted. The executors are merely stakeholders. They should have no interest in the matter except to make the equal and equitable distribution and division of the bequest which the testatrix declares shall be made.

It should be carefully kept in mind that this controversy relates solely to the distribution of the $1,500 legacy to the heirs of Wm. Wright. The distribution of the balance of the estate amounting to $27,991.62, as made by the auditor in his original report except as modified and amended by the order of June 26, 1911, has not been changed in the least particular or in any wise disturbed.

The report was referred back to the learned auditor to correct what we indicated and believed were specific errors. There was no dispute but what an error had been made as to the number and identity of the heirs of Wm. Wright. We further directed the auditor to distribute the amount of the bequest, viz.: the $1,500 less the collateral inheritance tax in equal shares between the heirs of Wm. Wright.

In the supplemental report the learned auditor makes on the distribution sheet the corrections which we indicated should be made and there the scope of his authority, in our opinion, ended.

Without holding a formal meeting of any kind he makes a number of findings of fact and conclusions of law. On

the first page of the supplemental report the following language appears: "that he (the auditor) has and hereby does accordingly surcharge the executors of the estate of Elizabeth W. Wynkoop, deceased, with the amount of the mortgage of William Wright to Elizabeth W. Wynkoop in the sum of eight hundred and sixty ($860.00) dollars for which amount the court has heretofore, to-wit: on June 26, 1911, allowed the said executors credit."

In referring the report back to the auditor for correction we did not instruct the auditor to surcharge the executors with the amount of the Wm. Wright mortgage. That is wrong. We merely directed the auditor to distribute the amount of the Wm. Wright mortgage equally to the heirs of Wm. Wright. The executors had charged themselves with the amount of the said mortgage. It was an asset of the estate in their hands for distribution. It is the last item of the inventory and appraisement. It had not been distributed.

In the original report the learned auditor actually distributed the amount of the Wm. Wright mortgage as though it were a part of the residuary estate of the residuary legatees. This was erroneous. He distributed to the residuary legatees the sum of $15,143.25. He should have distributed to them but the sum of $14,283.25.

The amendment allowed as of June 26, 1911, merely corrected this clerical error. It had no other force or effect. The application was to amend the schedule of distribution. Eight hundred sixty dollars more had been distributed to the residuary legatees than should have been distributed to them. It was the correction of a mere clerical error appearing on the face of the report. It was not the intention to allow the executors credit for the amount of the Wm. Wright mortgage, and the amendment makes no such allowance of credit to the executors. They did not ask for such allowance. The learned auditor was not warranted in concluding that the court had allowed the executors credit for the amount of the mortgage June 26, 1911.

And now September 2, 1912, for the reasons above given the exceptions to the auditor's supplemental report are all overruled and dismissed and the distribution of the $1,500 legacy to the Wm. Wright heirs as made by the supplemental report is confirmed absolutely. The findings of fact and conclusions of law contained in said report are not approved.

The court below awarded to the heirs of William Wright the full sum of $1,500 without deduction of the $860 mortgage.

*Error assigned* was in dismissing exceptions to auditor's supplemental report.

*Fred Ikeler,* for appellants.

*John J. Reardon,* with him *Chester E. Hall,* for appellee.

PER CURIAM, April 21, 1913:

The six judges who heard this case being equally divided in opinion the decree is affirmed at the cost of the appellants.

---

## Wynkoop's Estate (No. 2).

Argued March 3, 1913. Appeal, No. 00, Jan. T., 1913, by Samuel C. Stryker, administrator of Emily Stryker, deceased, from decree of O. C. Columbia Co., dismissing exceptions to supplemental report of auditor in Estate of Elizabeth W. Wynkoop, deceased. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Exceptions to auditor's supplemental report.   See Wynkoop's Estate No. 1, supra.